No. 8737.

THE STATE OF LOUISIANA EX REL. THE ADMINISTRATORS OF THE
UNIVERSITY OF LOUISIANA VS. E. A. BURKE, TREASURER.

Warrants issued in favor of the University of Louisiana, of the Agricultural and Mechanical
College, and of the University for the education of persons of color, under legislative
appropriations made in obedience to Articles 230 and 231 of the Constitution, are entitled
to be paid by preference over all other warrants drawn on the General Fund, with the
exception of warrants issued in favor of constitutional officers whose salaries are fixed by
the Constitution, the latter having priority over all other warrants drawn on said fund.

APPEAL from the Seventeenth District Court, Parish of East Baton
Rouge. *Sherburne*, J.

*Thos. J. Semmes* for the Relators, Appellants.

*J. C. Egan*, Attorney General, for the Respondent, Appellee.

The opinion of the Court was delivered by

POCHÉ, J. Relators are endeavoring to obtain a preferred payment
of warrants issued in favor of the University of Louisiana, under the
acts of appropriation passed by the legislature in the years 1880, 1881,
and 1882, amounting together to $22,500.

The rank claimed for said warrants is preference over all other war-
rants drawn against the General Fund, with the exception of warrants
in favor of the Mechanical and Agricultural College, and in favor of
the Colored University, which are acknowledged to be of equal rank,
and with the further exception of warrants in favor of constitutional
officers for their salaries, fixed in the Constitution, which are recog-
nized to be of superior rank.

For answer, the Treasurer denies the applicability of the writ of
mandamus in the premises; denies that he has funds available for the
payment of such warrants; avers the preference to be given to the
salaries of officers as fixed by the Constitution, and he pleads in bar of
this proceeding the judgment rendered by this Court in the mandamus
suit of these same relators against the same officer, reported in the
34th Annual Reports, p. 404.

In the other branch of his defense the Treasurer avers, and the
record shows, that the only funds in the treasury beyond what is
necessary to pay the salaries of constitutional officers is money known
as the *remitted interest fund*, which fund has been tied up in his hands
by means of several writs of injunction directed to him and emanating
from the Circuit Court of the United States for the Eastern District of
Louisiana, restraining him from obeying the mandate of the State
Constitution, which directs the use of such fund for the purpose of
defraying the expenses of the State government.

This appeal was taken by relators from a judgment denying the relief which they sought.

The plea of *res judicata* set up by the Treasurer presents itself at the threshold of the case, and naturally calls for our immediate attention.

The relief asked by the relators in their previous case, and which was denied to them by our decree, was payment of their warrants concurrently with all warrants issued to constitutional officers. Their demand in the present case is for preference over all warrants issued against the General Fund, with the exception of warrants for salaries of constitutional officers, which are admitted to be of superior rank, and for concurrence with warrants issued in favor of two other institutions of learning. The demand is obviously different from the cause of action disclosed in the previous suit, and hence the plea of *res judicata* must fall.

The objection that a writ of mandamus will not apply in this case, because the relief sought does not involve the performance of a ministerial duty, can only find its solution in the determination of the right of preference claimed by relators. If a proper construction of the Articles of the Constitution which have a bearing on the question, results in a recognition of the rank invoked for these warrants by relators, it will be manifestly the ministerial duty of the Treasurer to conform to the conclusion thus judicially sanctioned; and it is obvious that a mandamus is the proper remedy to enforce his compliance with a judicial interpretation of a constitutional provision. This position was distinctly held by this Court in the case of the State ex rel. Collens vs. Burke, Treasurer, 32 An. 1217.

The status of the warrants in favor of constitutional officers for their salaries, as fixed in the Constitution, is eliminated as an element of discussion in this case, by reason of their acknowledged superiority in rank, as admitted by both parties in the suit, as well as it is shown by the provisions of Act No. 2 of 1880, and by the decisions of this Court in the University case, 34 An. 404, and in the Collens case, 32 An. 1213.

In the latter case it was absolutely demonstrated that the legislature was powerless to defeat the expressed intentions of the organic law, and that the large discretion necessarily vested in the legislature as the saving power, is and must be "subject to the control of the Constitution and must only be exercised without prejudice to the rights guaranteed by that highest authority."

The same reasoning which determined the conclusion in that case, that the salaries of constitutional officers must be paid by preference, underlied the conclusion reached in the University case in the 34th Annual, that the payment of those salaries must also be preferred to the warrants now under consideration, and now dictates the additional

conclusion that warrants issued under a direct mandate of the Constitution must be allowed superiority of rank, out of the same fund, over all other warrants which cannot be traced to a like direct constitutional source.

After providing for a system of free public education in the State, and after directing the mode of securing the fund necessary to the maintenance of schools wherein the elementary branches should be taught, the Constitution of 1879 contains provisions for the maintenance of a State University.

The Convention obviously recognized the wisdom of the policy which fosters education in the higher branches of learning for the children of the State; and in order to carry out this policy, it adopted Articles 230 and 231 of the organic law, which treat of a State University.

With the evident intention of encouraging efforts in the direction of a more thorough education for the youths of the State, the Convention ordained as follows:

"The University of Louisiana, as at present established and located at New Orleans, is hereby recognized in its three departments, to-wit: the law, the medical and the academical departments, to be governed and controlled by appropriate faculties."

"The General Assembly shall, from time to time, make such provision for the proper government, maintenance and support of said University of Louisiana, and all the departments thereof, as the public necessities and well-being of the people of the State of Louisiana may require, not to exceed ten thousand dollars annually." (Art. 230.) The other portion of the Article and Article 231 contain similar provisions for the benefit of the Mechanical and Agricultural College and of the University for the education of persons of color.

The mandate of the Constitution to the legislature, in its requirement for the maintenance and support of the University, is couched in positive language; the amount of the appropriation being the only matter left to the discretion of General Assembly. Now, as the Constitution limited the extent of the taxing power conferred exclusively to the legislative department of the government, and considering that the power to make appropriations lodged in the same branch of the government, could not be limited or circumscribed, it follows, as a logical consequence, that the efficacy of the appropriations contemplated and specially commanded in the organic law were not intended to be affected, and in a measure thwarted by the future appropriations which the legislature, in its discretion, could order or adopt. In other words, the will of the organic law cannot be reasonably construed to be

subservient to the will of the legislature, the mere creature of the former.

It is, therefore, logical to conclude that when the legislature has exercised its constitutional discretion in fixing the extent of an appropriation specially commanded by the Constitution, the appropriation thus made is necessarily clothed with all the characteristics of a constitutional appropriation, and that its payment must be preferred to all other appropriations which emanate purely from legislative enactments adopted under legislative discretionary taxing power, and not specially directed by the Constitution.

A different construction would eventually deny constitutional protection to those subjects which had been guarded by the special solicitude of the framers of the Constitution.

Our conclusion is therefore favorable to the preference claimed for these warrants by the relators in this case.    But we cannot grant the peremptory mandamus which these conclusions might justify under ordinary circumstances.                     :

The record shows the want of funds in the treasury presently available for the payment of such warrants.    Hence, the impossibility of ordering an absolute payment by the Treasurer out of a depleted fund.

But under Article 3 of the State Debt Ordinance of the Constitution, the amount of taxes collected for the payment of the coupons of the consolidated bonds maturing on the first of January, 1880, and shown in this record to amount to several hundred thousand dollars, should have been transferred to defray the expenses of the State government; and such fund would doubtless be available for the payment of the warrants now under consideration, were it not for the interference of the federal court, as above stated.

The object and the effect of the various writs of injunction issued by the Circuit Court of the United States, invoked herein by the Treasurer, have been to restrain that officer from obeying the imperative mandate of the State touching the disposition of funds belonging to the State.    It is true, as suggested by the Treasurer in his answer herein, that it was not his duty to disobey these injunctions while they are in force.

But under the recent decisions rendered by the Supreme Court of the United States, in the cases known as the "Louisiana cases," it might become the plain and unavoidable duty of that officer to institute the proceedings necessary to obtain the dissolution of injunctions which are stamped with nullity by the highest tribunal of the land and to thus restore the State of Louisiana to her constitutional right to administer and absolutely control her own finances.

Under the peculiar circumstances surrounding this case, we shall

issue a qualified mandamus which will secure the rights of relators under the rank of preference which they claim for the warrants held for account of the State University.

We must not be understood as determining in this opinion the legal rank of warrants in favor of constitutional officers whose salaries are not fixed in the Constitution. That question cannot be inquired into until properly presented in a direct issue.

The judgment of the lower court is, therefore, reversed, and it is ordered, adjudged and decreed that the warants issued in favor of the University of Louisiana, under the appropriations adopted by the legislature, in obedience to Article 230 of the Constitution, for the years 1880, 1881 and 1882, are entitled to be paid by preference over all other warrants drawn against the General Fund, with the exception of warrants in favor of the Mechanical and Agricultural College and of the University for the education of persons of color, which are concurrent in rank therewith ; and with the further exception of warrants for the salaries of constitutional officers, as fixed by the Constitution, which are entitled to preference over all other warrants drawn on said fund.

And it is further ordered that a mandamus issue directed to E. A. Burke, Treasurer, commanding him to pay in the order hereinabove indicated the warrants described in relators' petition, out of all funds to the credit of the General Fund, derived from any and all sources.

It is finally ordered that the defendant pay all costs in both Courts.